UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL C. DEAN                                CIVIL ACTION

VERSUS                                        NO. 11-2209

CITY OF NEW ORLEANS, erroneously sued          MAGISTRATE JUDGE
as NEW ORLEANS POLICE DEPARTMENT               JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Plaintiff, Darryl C. Dean, proceeding pro se and in forma pauperis, filed the instant complaint in the United States District Court for the Northern District of Texas against Karen G. Mills, the Director of the Small Business Administration, and the New Orleans Police Department, alleging numerous constitutional, federal statutory and state law violations. Record Doc. No. 1. To clarify Dean's claims against the New Orleans Police Department, the district court in Texas required him to respond to a Magistrate Judge's Questionnaire. After receiving plaintiff's answers to the questionnaire, Record Doc. No. 9, the court severed all claims against the New Orleans Police Department and transferred them to this court. Record Doc. No. 12.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 21.

Defendant, the City of New Orleans (erroneously sued as the New Orleans Police Department), moved to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(c). Record Doc. No. 27.  Dean filed a timely opposition memorandum, in which he also seeks to have the City held in contempt for its alleged failure to comply with court-ordered deadlines.  Record Doc. No. 29.

The City of New Orleans received leave to file a reply memorandum.  Record Doc. Nos. 31, 32, 33.  Plaintiff also received leave to file a reply memorandum.  Record Doc. Nos. 34, 35, 36.  Because plaintiff's pro se submissions must be construed broadly,[1] I have considered <u>all</u> of his written submissions in opposition to defendant's motion to dismiss.

Having considered the record, the complaint as amended by plaintiff's answers to the Magistrate Judge's Questionnaire, the submissions of the parties, and the applicable law, IT IS ORDERED that defendant's motion is GRANTED for the following reasons.

I.    <u>PLAINTIFF'S ALLEGATIONS AND BACKGROUND INFORMATION</u>

In his federal court complaint against Karen G. Mills and the New Orleans Police Department (the "Police Department"), Dean brings claims based on "racial, sex, veteran's disability determination, giving false information, perjury, [and] violation of

---

[1]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Privacy Act."  Complaint, Record Doc. No. 1 at p. 1.  He cites Title VII, 42 U.S.C. § 2000(e) et seq., and the Rehabilitation Act, 28 U.S.C. §§ 791, 794(c), as statutory bases for his complaint.  Id. at p. 2.

Dean captions his complaint as a "Motion to Appeal" from a federal agency decision in the matter of "Darryl C. Dean v. Karen G. Mills, Administrator of the Small Business Administration, Agency, Appeal No. 0120091112, Agency No. 450-2008-00233X, Agency No. 11-08-010."  This identifying information refers to Dean's administrative appeal from a decision of an Administrative Law Judge ("ALJ") in a matter before the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC").  Dean states that his federal court complaint is "a request for reconsideration due to clearly erroneous interpretation of material fact and law."  Id.  As "supporting documentation," id., he has attached a copy of the EEOC's decision on appeal, dated July 8, 2011.  Id. at pp. 4-7.

The factual allegations of Dean's complaint, particularly regarding the actions of the Police Department, are nonspecific and unclear.  However, his complaint incorporates the EEOC's decision on appeal.  Because the facts reported in that decision clarify the vague allegations of Dean's complaint in this court, I first summarize the EEOC's decision.

According to the decision, the Small Business Administration (the "SBA") hired Dean as a temporary paralegal specialist in its Office of Disaster Assistance in Fort Worth, Texas on April 10, 2006.  His temporary appointment "was extended numerous times."  Id. at p. 6.

On December 17, 2007, Dean filed a complaint of race, sex, age and disability discrimination with the EEOC based on three events at the SBA:  (1) He was notified on October 29, 2007 that his temporary appointment would expire on November 10, 2007. (2) He was placed on administrative leave on November 7 and 8, 2007 because of his misrepresentation or omission of facts in connection with his federal employment application, his failure to follow his supervisor's instructions and because "he raised safety concerns regarding his presence" at his work location "due to being falsely accused of carrying a firearm."  (3) On November 7, 2007, security personnel at his workplace gave Dean a criminal trespass warning.  Id. at p. 5.

The ALJ determined the following facts.  On October 1, 2007, Dean's supervisor at the SBA observed him wearing an empty gun holster in the office.  The incident prompted an investigation by the SBA and then by the Office of Inspector General. During the investigation, the Inspector General advised the SBA that Dean had been terminated from his employment with the Police Department effective June 17, 2003. Dean had not disclosed that termination on his federal employment application in 2006.

4

Plaintiff then admitted that he had been terminated by the Police Department in 2003, but said he had been reinstated upon appeal.  Because he had made false statements on his employment application, the SBA advised Dean that it would not extend his temporary appointment beyond its November 10, 2007 expiration date.  Id. at p. 6.

The SBA told the EEOC that it had placed Dean on administrative leave on November 7 and 8, 2007, because he had created a disturbance regarding the gun holster incident and because of safety concerns.  The SBA reported that, after Dean was notified that his appointment would not be renewed, he "wandered off from his assigned work area without saying where he was going; took an excessive number of cell phone calls during work hours; was not being diligent with his duties; and made complaints about his coworker who he claimed had said she would bring a gun to work and shoot him."  Id.

The Federal Protective Service issued a criminal trespass warning to Dean on November 7, 2007.  Plaintiff's supervisor told the security officer that "she and other management officials were concerned for their safety because of [Dean's] behavior with the gun holster, his other behavior issues, and because he was going to be laid off within the next couple of days.  [The supervisor also reported that] several employees [were] concerned about how [Dean] was going to react toward the layoff."  Id.

The ALJ found that the SBA had proffered legitimate nondiscriminatory reasons for its actions and that no race, sex or age discrimination had occurred. The EEOC did not decide whether Dean was a qualified individual with a disability because he had not claimed that he was denied a reasonable accommodation. The ALJ's decision was affirmed on appeal because it was supported by substantial evidence. Id. at p. 7.

The EEOC's notice of denial of Dean's appeal, dated July 8, 2011, advised him that he had 90 days from his receipt of the decision to file a civil action, in which he must name the head of the SBA as defendant. He filed the instant complaint against Mills and the Police Department in the Northern District of Texas on July 15, 2011.

This factual background assists the court in understanding the allegations of Dean's vague complaint. He states that the

> empty gun holster issue was found not charges [sic]. This issue was used by the white females involved to contact the New Orleans Police Department and receive erroneous information and information that was illegal to be released. I explained to the parties involved that I was mobilized on active duty and could not be terminated while serving my country and a copy of my orders were submitted to the New Orleans Police Department. This is clear discrimination of race due to the parties being white, sex due to the parties being female, and clear federal violation of due process, privacy and illegal reporting of status.
>
> The SBA was aware that I was military as I receive military preference points and additional vacation days. They were informed of my surgery at the VA hospital and the disability requirements submitted from the VA doctors for future working accommodations. One of the accommodations was that I be allowed to move around every 20 to 30 minutes, which is why I was allowed to be away from my desk during this time frame for medical reasons. The fact is this does qualify as

6

discrimination due to known reasonable medical disability accommodation requirements that were agreed to be accommodated.

There were SBA members that lied, perjured themselves and giving conflicting statements under oath and I was not allowed to have my witnesses that were present during every issue, Mr. Gary Minor, Mr. Ozel, and my immediate supervisor, Mr. Allen.

Id. at p. 2.

After Dean filed this lawsuit, the Magistrate Judge in Texas ordered him to answer a questionnaire to clarify his allegations against the Police Department.[2]   Plaintiff responded to the questionnaire by stating that the allegations against him at the SBA were instigated by a white, female employee and that, during the investigation by the SBA and the Inspector General, two other white, female employees of the SBA "went into my records [and] notified the New Orleans Police Department."   Dean alleges that the Police Department "at that time violated" the Privacy Act, the Health Insurance Portability and Accountability Act ("HIPAA") and the Americans with Disabilities Act and "pe[r]jured themselves by fals[e]ly giving information to a federal agency."   He states that the "false information given was used to federally defame my character,

---

[2]The Fifth Circuit "has long held that district courts may require a pro se litigant to complete a post-complaint questionnaire."   Brewster v. Dretke, 587 F.3d 764, 768 (5th Cir. 2009).   "Because the answers to the questionnaire will effectively amplify the original allegations in the [litigant's] complaint, cf. Rule 15(a), F. R. Civ. P., they are an integral part of that complaint and not a separate, independent pleading."   Watson v. Ault, 525 F.2d 886, 892 (5th Cir. 1976).   The plaintiff's answers are treated as an amendment to the complaint.   Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), overruled on other grounds, Neitzke v. Williams, 490 U.S. 319, 324 (1989); Carter v. Chisum, No. 1:07-CV-755, 2008 WL 4279934, at *1 (E.D. Tex. Sept. 12, 2008); Okpulor v. PNC Bank, No. 3:04-CV-1755-M, 2005 WL 6047275, at *1 n.1 (N.D. Tex. Dec. 14, 2005).

discontinue my employment and violated my rights under" 10 U.S.C. § 12304 "of the military called to active duty;" 38 U.S.C. § 4313, the Uniformed Services Employment and Reemployment Rights Act; and federal regulations concerning veterans with service-connected disabilities.  Record Doc. No. 9 at p. 1.  In answer to the question of which federal law he is suing the Police Department under, Dean states "violation of federal perjury, giving false/erroneous information to a federal agency, HIPAA law which involves the Privacy Act of 1974, 5 U.S.C.  Public Law No. 93-579 (Dec. 31, 1974) a code of fair information practices, [and] federal title 10 U.S.C. section 12304 of the military called to active duty."  Id. at p. 3.

Thus, broadly construing his complaint against the City of New Orleans, as amended by his answers to the Magistrate Judge's questionnaire, plaintiff alleges that unnamed employees of the Police Department provided white female employees of the SBA with false or erroneous information in violation of his due process and privacy rights, defamed him by releasing false information and discriminated against him based on his race, sex, disability and/or military status.  The Police Department's actions must have occurred before October 29, 2007, when the SBA notified Dean that his appointment would not be renewed, and certainly no later than November 10, 2007, when the SBA terminated Dean's employment, based at least in part on the information that the SBA had acquired from the Police Department.  Plaintiff knew of the Police

8

Department's actions regarding the release of information no later than December 17, 2007, when he filed a complaint of race, sex, age and disability discrimination with the EEOC, which included the allegation that he was placed on administrative leave on November 7 and 8, 2007 because of his misrepresentation or omission of facts in connection with his federal employment application.

II.     PLAINTIFF'S MOTIONS ARE DENIED

In his memorandum in opposition to defendant's motion to dismiss and his reply memorandum, Dean asks the court to hold the City of New Orleans in contempt for its alleged failure to comply with this court's scheduling order.  Although Dean's requests are presented in his opposition memoranda, rather than in the form of a motion, which would be the procedurally proper manner to seek affirmative relief, the court has considered his requests.

To the extent that plaintiff's requests can be considered a motion for contempt, it is denied.  The court's scheduling order does <u>not</u> require the City to take discovery, employ experts to provide reports or participate in a settlement conference, as Dean contends.  The order merely sets deadlines by which such actions must be completed, if the parties choose to undertake them.

In his opposition memorandum and reply memorandum, Dean adds new, vague and conclusory allegations, unsupported by any specific facts or dates, that the City of

New Orleans committed payroll fraud, unconstitutional searches, false detention, taking of property without consent or a warrant, destruction of property, retaliation, whistleblowing, violations of Department of Labor employment rights, negligence and corruption. Defendant in its reply to plaintiff's original opposition memorandum opposes his attempt to add these new allegations to his complaint. Record Doc. No. 33.

To the extent that the new allegations in plaintiff's memoranda can be considered as a motion for leave to amend his complaint, the motion is denied. The court-ordered deadline to amend pleadings was December 8, 2011, Record Doc. No. 23, six months before Dean filed his first opposition memorandum. He has proffered no explanation for his failure to move timely to amend his complaint. The importance of his new allegations is entirely unclear. Defendant would be severely prejudiced in its ability to prepare for trial or otherwise address the new allegations at this late date. A continuance to cure the prejudice is not available. Thus, plaintiff has not carried his burden to show good cause to extend the deadline to allow him to amend at this very late date, only a few weeks before the scheduled final pretrial conference date of June 28 and trial date of July 16, 2012. Fed. R. Civ. P. 16(b)(4); Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003); S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003); Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008); Nunez v. U.S. Postal Serv., 298 F. App'x 316, 319 (5th Cir. 2008).

III.     STANDARDS OF REVIEW

    A.     In Forma Pauperis Complaints

A pro se complaint filed in forma pauperis shall be dismissed "at any time" if the court determines that it is frivolous, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges . . . the authority to dismiss a claim based on an indisputably meritless legal theory.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate . . . ."  Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992).  An in forma pauperis complaint that is legally frivolous, fails to state a claim or seeks monetary relief against a defendant who is immune from such relief may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2)(B).

In this case, plaintiff's complaint may be dismissed either under 28 U.S.C. § 1915(e) as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) because it fails to state a cognizable claim under the broadest reading.

      B.      <u>Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)</u>

The City of New Orleans moved for judgment on the pleadings to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(c). "The standard for dismissal for a Rule 12(c) motion for judgment on the pleadings is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." <u>Wolfe v. Fidelity Nat'l Ins. Co.</u>, No. 06-4928, 2008 WL 89643, at *2 (E.D. La. Jan. 7, 2008) (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004)). Thus, Rule 12(b)(6) supplies the standard of review for defendant's motion to dismiss.

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court clarified the standard for reviewing a motion to dismiss under Rule 12(b)(6). The Fifth Circuit has explained the Supreme Court's current standard as follows:

> When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" The Supreme

> Court in <u>Iqbal</u> explained that <u>Twombly</u> promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief.  First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Legal conclusions "must be supported by factual allegations."
>
> Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

<u>Rhodes v. Prince</u>, 360 F. App'x 555, 557-58 (5th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 678, 679; <u>Twombly</u>, 550 U.S. at 555; <u>Gonzales v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)) (citing <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996)); <u>accord</u> <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 796 (5th Cir. 2011).

The Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  <u>Iqbal</u>, 556 U.S. at 678.  The facial "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (quotation omitted).

"[A] court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the Plaintiff an opportunity to amend."  Litson-Gruenber v. JPMorgan Chase & Co., No. 7:09-cv-056-0, 2009 WL 4884426, at *6 (N.D. Tex. Dec. 16, 2009) (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000)); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

However, that general rule does not apply if amendment of the complaint would be futile, such as when it is evident from the plaintiff's pleadings that the action is time-barred or that the theory presented in the amendment lacks legal foundation.  Townsend v. BAC Home Loans Servicing, L.P., 461 F. App'x 367, 2011 WL 6032946, at *3 (5th Cir. Dec. 5, 2011); Jaso v. The Coca Cola Co., 435 F. App'x 346, 351-52 (5th Cir. 2011) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 466 (4th Cir. 2007); Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1357 at 714-21 (3d ed. 2004)).

IV.    STATUTE OF LIMITATIONS/PRESCRIPTION

With respect to a statute of limitations defense, dismissal for failure to state a claim is proper when "it is evident from the pleadings that the action is barred and the pleadings fail to raise some basis for tolling."  Jones, 339 F.3d at 366; accord Jaso, 435 F. App'x at 351-52.

The district court may raise the limitations defense sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915(e).  Wilke v. Meyer, 345 F. App'x 944, 945 (5th Cir. 2009); Lopez-Vences v. Payne, 74 F. App'x 398, 398 (5th Cir. 2003) (citing Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993)).

A.   Plaintiff's Section 1983 Claims Are Time-Barred

Dean's claims against the City of New Orleans for constitutional violations under 42 U.S.C. § 1983 arise from events that occurred no later than November 10, 2007, when the SBA terminated plaintiff's employment based, at least in part, upon information given to it by the Police Department.  These claims are barred by the applicable statute of limitations, or the concept of "prescription" under analogous Louisiana law, because defendant's conduct, as alleged in Dean's complaint, "clearly occurred outside of the limitations period applicable to [his] claims."  Jaso, 435 F. App'x at 352.

Although Section 1983 has no statute of limitations, the Louisiana prescription statute is applicable to suits in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims.  In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471

U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Moore, 30 F.3d at 620; Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)); accord James v. Branch, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009).

Federal law determines when a Section 1983 claim accrues.  Jacobsen, 133 F.3d at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action.  The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief."

Duplessis, 2009 WL 3460269, at *5 (quoting Wallace, 549 U.S. at 388) (citing Jacobsen, 133 F.3d at 319; Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998)); accord Dixon v. Cooper, 260 F. App'x 728, 729 (5th Cir. 2007); Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995).  Determination of when plaintiff knew or should have known of the existence of a possible cause of action has two factors:  "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."  Id.; accord Dixon, 260 F. App'x at 729.

According to Dean's complaint, which incorporates the EEOC's decision, his Section 1983 claims are based on incidents that occurred on or before November 10, 2007, when the SBA terminated his employment.  His complaint reveals that he knew by December 17, 2007 that the Police Department had given information about him to the SBA because, on that date, he filed a complaint of race, sex, age and disability

discrimination with the EEOC, which included the allegation that the SBA had placed him on administrative leave because of his misrepresentation or omission of facts in connection with his federal employment application.

Dean therefore had one year, or until December 17, 2008, at the latest, within which to file suit regarding his Section 1983 claims based on the Police Department's release of information to the SBA.  To the extent he attempts to bring a Section 1983 claim based on the Police Department's termination of his employment that was effective on June 17, 2003, that claim prescribed on June 17, 2004.

Because the instant lawsuit was not filed until July 15, 2011, more than two and one-half years after the limitations period expired regarding his release of information claim and more than seven years after the limitations period expired regarding his termination by the Police Department, his Section 1983 claims are time-barred.

B.    Plaintiff's Race, Sex and Disability Discrimination Claims Are Time-barred

Plaintiff's claims of race, sex and disability discrimination under Title VII, the Americans with Disabilities Act and the Rehabilitation Act are also barred by the applicable statute of limitations.

The Americans with Disabilities Act incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, set forth in 42 U.S.C. § 2000e-5.  See 42 U.S.C. § 12117.  Thus, before pursuing a claim under either Title VII or the Americans with

Disabilities Act, a plaintiff must file a timely charge of discrimination with the EEOC. Simotas v. Kelsey-Seybold, 211 F. App'x 273, 275 (5th Cir. 2006) (citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996)).   In a "deferral state" such as Louisiana, the charge must be filed within 300 days of the allegedly discriminatory act. Windhauser v. Bd. of Supervisors, 360 F. App'x 562, 566 (5th Cir. 2010) (citing Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998)). "The relevant date for determining the beginning date for the limitations period is the day the employee learns that the challenged decision has been made, not when she feels the effects of that decision." Simotas, 211 F. App'x at 275.

The Rehabilitation Act requires that an aggrieved employee contact an Equal Employment Opportunity counselor within 45 days of the allegedly discriminatory act. Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003) (citing 29 C.F.R. § 1614.105(a)(1)).

If a plaintiff fails to comply timely with these requirements, his complaint in federal court will be barred.  In the instant case, Dean's complaint fails to allege that he filed any charge of discrimination with the EEOC or contacted an EEO counselor regarding his complaint that the Police Department, the only defendant in the severed portion of his case that was transferred to this court, discriminated against him when it released information about him to the SBA.   The only charge of discrimination

referenced in his complaint was a charge against the SBA, <u>not</u> the City of New Orleans or its police department.

The Police Department's allegedly discriminatory act of disclosing information about Dean occurred no later than November 10, 2007, when the SBA terminated his employment based in part on his misrepresentation or omission of facts regarding his 2003 termination by the Police Department on his federal employment application. Dean must have known of the Police Department's acts no later than December 17, 2007, when he filed his charge of discrimination against the SBA.

Plaintiff had, at the latest, 300 days from December 17, 2007 or until October 12, 2008, to file a complaint of discrimination against the City of New Orleans. Because he is now time-barred from filing a charge of discrimination, he cannot file a complaint of discrimination in federal court.

C.   <u>Plaintiff's Veteran's Reemployment Claim Is Time-barred</u>

The Uniformed Services Employment and Reemployment Rights Act (the "Reemployment Rights Act"), 38 U.S.C. § 4301 et seq., creates

> a comprehensive statutory scheme to provide civilian reemployment rights for those who serve in the armed forces in order "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." The Act also aims "to minimize the disruption to the lives of persons performing service," and "to prohibit discrimination against persons because of their service."

Smith v. U.S. Postal Serv., 540 F.3d 1364, 1366 (Fed. Cir. 2008) (quoting 38 U.S.C.
§ 4301(a)).

Section 4311 of the Reemployment Rights Act generally prohibits employment
discrimination and retaliation against a person who served in a uniformed military
service.  Sections 4312 and 4313 generally provide rights of reemployment and benefits
for a person who was required to be absent from employment for military service.  To the
extent, if any, that Dean asserts a cause of action against the City of New Orleans under
the Reemployment Rights Act arising out of his termination from the Police Department
effective June 17, 2003, and assuming without deciding that he qualified for any
reemployment rights, that claim is time-barred.

The federal four-year "catch-all" statute of limitations for general civil claims, 28
U.S.C. § 1658, was enacted on December 1, 1990.  It provides: "Except as otherwise
provided by law, a civil action arising under an Act of Congress enacted after the date
of the enactment of this section may not be commenced later than 4 years after the cause
of action accrues."  28 U.S.C. § 1658.  The Reemployment Rights Act was enacted four
years later in 1994 and has no statute of limitations.  Therefore, 28 U.S.C. § 1658
provides the applicable four-year statute of limitations for Dean's claim that arose in June
2003.  Middleton v. City of Chicago, 578 F.3d 655, 657-60, 662 (7th Cir. 2009); Brill v.
AK Steel Corp., No. 2:09-cv-534, 2012 WL 893902, at *8-9 (S.D. Ohio Mar. 14, 2012);

Tully v. County of Nassau, No. 11-CV-2633, 2012 WL 487007, at *7 (E.D.N.Y. Feb. 14, 2012); Charcalla v. Gen. Elec. Transp. Sys., No. 11-277, 2012 WL 1436563, at *6 (W.D. Pa. Apr. 25, 2012); Moore v. United Air Lines, Inc., No. 10-cv-02100-WYD-CBS, 2011 WL 2144629, at *6 (D. Colo. 2011).

Dean was required to bring his claim for reemployment no later than four years after the effective date of his termination, or by June 17, 2007.  He did not file the instant lawsuit until July 15, 2011, more than four years after the deadline expired.  His claim, if any, against the City of New Orleans for reemployment is therefore time-barred.

## V.   PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM FOR RELIEF UNDER FEDERAL LAW

Even if Dean's claims under Section 1983, Title VII, the Americans with Disabilities Act and the Rehabilitation Act had not prescribed before he filed this lawsuit, he fails to allege sufficient facts to assert a viable claim for relief against the City of New Orleans under these statutes or any other federal law.  For the following reasons, defendant's motion to dismiss plaintiff's federal claims is granted and/or plaintiff's claims are dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### A.   Plaintiff Fails to State a Claim for Municipal Liability

Dean asserts federal constitutional claims against the City of New Orleans under 42 U.S.C. § 1983, including denials of due process arising out of an alleged violation of his privacy rights and defamation.  The City argues that plaintiff fails to state a claim

under Section 1983 because he does not allege that the City had a municipal policy that caused his injuries.

Dean makes no claim that any particular person was personally involved in any of the alleged acts or omissions upon which his claims of constitutional violations are based.  Regardless, "[t]here is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, the City cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in its employ or under its supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To recover against a municipality like the City of New Orleans, plaintiff must show that the deprivation of a constitutional right was pursuant to governmental custom, policy, ordinance, regulation or decision.  A municipality may be held liable for the actions of its employees only if the municipality, through an official policymaker, implemented an unconstitutional policy that causally resulted in plaintiff's injury.

Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Gates v. Tex. Dep't of

Protective & Regulatory Servs., 537 F.3d 404, 436 (5th Cir. 2008).

> It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation. A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

Id. (citing Monell, 436 U.S. at 694; Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th

Cir. 2003)).

Thus, "municipal liability under section 1983 requires proof of three elements:

a policymaker; an official policy; and a violation of constitutional rights whose 'moving

force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th

Cir. 2001) (citation omitted); accord Duvall v. Dallas County, 631 F.3d 203, 209 (5th

Cir. 2011). "However, [i]solated violations are not the persistent, often repeated constant

violations that constitute custom and policy as required for municipal section 1983

liability." Gates 537 F.3d at 437 (quotation omitted) (emphasis added).

In the instant case, Dean "has alleged no facts that would support an inference that

the police [department employees] acted pursuant to a policy or custom." Floyd v. City

of Kenner, 351 F. App'x 890, 900 (5th Cir. 2009) (citing Gates, 537 F.3d at 436). At

23

most, he has alleged an isolated instance in which a Police Department employee released information about him to the SBA some time between October 1, 2007, when he was seen wearing an empty gun holster in the workplace, which led to the Inspector General's investigation, and November 10, 2007, when Dean's employment at the SBA terminated, at least in part because of information acquired from the Police Department. Plaintiff has made only vague and conclusory allegations that the Police Department's actions were constitutional violations.  Bender v. Town of Homer, No. 5:10-CV-01496, 2011 WL 1436641, at *4 (W.D. La. Apr. 13, 2011) (citing Monell, 436 U.S. at 694; Gates, 537 F.3d at 436).

Therefore, Dean fails to state a plausible claim for relief for municipal liability under Section 1983, and all such claims against the City of New Orleans must be dismissed.

B.   Plaintiff Fails to State a Claim for Perjury

Dean alleges that an unnamed employee of the City of New Orleans committed perjury at an unspecified time.  Perjury is a crime under both federal and Louisiana law. 18 U.S.C. § 1621; La. Rev. Stat. § 14:123.  Even if Dean had alleged facts to show that a specific employee of the Police Department committed perjury as defined by the relevant criminal statutes, which he has not, he fails to state a claim upon which relief can be granted because he has no right to bring a civil action for damages for perjury.

> "[F]ederal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." <u>Doyon v. U.S.</u>, 2008 WL 2626837, *4 (W.D. Tex. 2008); <u>Williams v. Cintas Corp.</u>, 207 WL 1295802, *2 (N.D. Tex. 2007) (same); and <u>Ivey v. National Treasury Employees Union</u>, 2007 WL 915229 *5 (D.D.C. 2007) ("There is no private right of action to enforce provisions of criminal law, and only a federal prosecutor may determine whether to pursue a criminal action.").
>
> It is also the general rule that "no civil action lies for damages resulting from false statements under oath constituting perjury or subornation of false testimony." 60A Am. Jur. 2d § 104. "Thus, no action for damages lies for false testimony in a civil suit whereby the litigant fails to recover a judgment, or a judgment is rendered against him." <u>Id.</u> <u>See also</u> <u>Testimony of Witness as Basis of Civil Action for Damages</u>, 54 A.L.R 2d 1298 § 7 ("It has been held that no civil redress lies against witnesses in previous litigation by reason of their perjury, conspiracy to commit perjury, or subornation of perjury.").

<u>Jackson v. Wolf</u>, No. 10-CV-1918, 2011 WL 533715, at *2 (W.D. La. Jan. 24, 2011), <u>report & recommendation adopted</u>, 2011 WL 2322187 (W.D. La. Feb. 8, 2011); <u>accord</u> <u>Smith-Ealy v. Loe</u>, No. 09-cv-1737, 2010 WL 65032, at *2 (W.D. La. 2010).

Accordingly, Dean fails to state a cognizable claim for perjury. This claim must be dismissed.

C.   <u>Plaintiff Fails to State a Claim for Defamation Under Section 1983</u>

Dean alleges that allegedly false information released by the Police Department to the SBA was "used to federally defame my character [and] discontinue my employment." Record Doc. No. 9 at p. 1. These allegations fail to state a plausible claim under Section 1983 upon which relief can be granted.

A defamation claim may be brought under Section 1983 as a due process claim arising out of the Fourteenth Amendment.  For such a claim, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."  Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (quotation omitted).

> It is well established that
>
> "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest."  But "a plaintiff may assert a constitutional violation by alleging a stigma 'plus an infringement of some other interest'"–the so-called "stigma-plus" theory.  "This test permits recovery under § 1983 when a claimant shows that the government, through defamation, sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights."

Shoemaker v. Robinson, No. 3:09CV645-DPJ-FKB, 2011 WL 679206, at *5 (S.D. Miss. Feb. 16, 2011) (quoting Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 561 n.3 (5th Cir. 2003); Tebo v. Tebo, 550 F.3d 492, 503 (5th Cir. 2008); Thinkstream, Inc. v. Adams, 251 F. App'x 282, 284 (5th Cir. 2007)) (internal quotations omitted).  Dean has alleged no facts to show that the City of New Orleans, through allegedly false statements of Police Department employees, sought to remove or significantly alter any life, liberty or property interest recognized and protected by state law or the Constitution.

Even assuming that Dean could satisfy the stigma prong, he has not alleged the deprivation of a protected liberty interest based on allegedly defamatory harm to his

ability to gain employment. "Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries." Vander Zee v. Reno, 73 F.3d 1365, 1369 (5th Cir. 1996) (citing Siegert v. Gilley, 500 U.S. 226, 234 (1991)). "'[S]o long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a [federal civil rights] action.'" Id. at 1370 (quoting Siegert, 500 U.S. at 234); accord Thinkstream, 251 F. App'x at 284.

Nor has Dean alleged a protected property interest in his continued employment by the SBA.

> To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law . . . ." In Texas, there exists a presumption that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated. "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."

Gentilello, 627 F.3d at 544 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Montgomery Cnty. Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998)) (citing Muncy v. City of Dallas, 335 F.3d 394, 398 (5th Cir. 2003)).

In the instant case, Dean's appointment in April 2006 as a paralegal specialist with the SBA in Texas was temporary. After extending the appointment several times, the

SBA decided not to renew it in November 2007.  Dean had no constitutionally protected property interest in that temporary employment.  Indeed, he could not have had any protected property interest in at-will employment, even if he had been hired for a "permanent" job.  "[B]ecause [plaintiff] was employed in Texas, an at-will employment state, he could have no protected property interest in his job.  A protected property interest in employment begins only where an employee has an express or implied right to continued employment, but no such property interest is created by the Constitution." Knowles v. United States, No. 4:07-CV-578, 2009 WL 2882956, at *7 (E.D. Tex. Aug. 31, 2009) (citing Farias v. Bexar County, 925 F.2d 866, 877 (5th Cir. 1991); White v. Miss. State Oil & Gas Bd., 650 F.2d 540, 541 (5th Cir. 1981)); accord Price v. Univ. of Ala., 104 F. App'x 152, 2004 WL 1253201, at *2 (11th Cir. 2004); Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002); Decuir v. Richards, 20 F.3d 1171, 1994 WL 144843, at *2-3 (5th Cir. 1994).

Accordingly, plaintiff has failed to state a cognizable claim for defamation under Section 1983, and this claim must be dismissed.

D.   Plaintiff Fails to State a Claim Under the Privacy Act

Dean cites the federal Privacy Act as a legal basis for his claim that the Police Department violated his privacy rights by releasing information to the SBA.  The Privacy Act, 5 U.S.C. § 552a, provides in relevant part that "[n]o agency shall disclose any record

which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."  Id. § 552a(b).  Under the Privacy Act, "the term 'agency' means agency as defined in section 552(e) of this title." Id. § 552a(1).  However, "section 552(e) of this title was redesignated section 552(f) of this title by section 1802(b) of Pub. L. 99-570."  Historical and Statutory Notes to section 552a.

Section 552(f)(1) defines "agency" by referring to the definition in section 551(1), as follows:  "For purposes of this section, the term – (1) 'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."   Section 551(1) states that, "for purposes of this subchapter," which includes both the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552, "'agency' means each authority of the Government of the United States," with some exceptions not relevant in the instant case.

It is well established that the Privacy Act and the Freedom of Information Act apply only to the actions of federal agencies and that neither Act applies to the actions of state or local agencies, such as the City of New Orleans or its Police Department, nor

to any individual defendant.  <u>Brown v. Kelly</u>, No. 93-5222, 1994 WL 36144, at *1 (D.C.

Cir. Jan. 27, 1994); <u>Doe v. Naval Air Station</u>, 768 F.2d 1229, 1231 n.1 (11th Cir. 1985);

<u>St. Michael's Convalescent Hosp. v. California</u>, 643 F.2d 1369, 1373 (9th Cir. 1981);

<u>Jolly v. Town of Randolph Police Dep't</u>, No. 11-11588-DJC, 2011 WL 5506092, at *2

(D. Mass. Nov. 9, 2011); <u>Hackett v. New Jersey</u>, No. 10-2547, 2010 WL 4553526, at *2

(D.N.J. Nov. 3, 2010); <u>Gamble v. Dep't of Army</u>, 567 F. Supp. 2d 150, 154 (D.D.C.

2008); <u>Osipova v. NY City</u>, No. 02 Civ. 5072(LMM), 2002 WL 31558031, at *2

(S.D.N.Y. Nov. 19, 2002) (citing <u>Grand Cent. P'ship, Inc. v. Cuomo</u>, 166 F.3d 473, 484

(2d Cir. 1999)); <u>Ferguson v. Ala. Crim. Justice Info. Ctr.</u>, 962 F. Supp. 1446, 1447 (M.D.

Ala. 1997).

Accordingly, plaintiff's claim against the City of New Orleans under the Privacy

Act must be dismissed for failure to state a claim upon which relief can be granted.

E.      <u>Plaintiff Fails to State a Claim Under HIPAA</u>

Dean also alleges that the Police Department's release of information to the SBA

violated his privacy rights protected by HIPAA.  HIPAA is a federal statute that

generally provides for the confidentiality of medical records.

However, HIPAA provides no express or implied private cause of action for

unauthorized disclosures of confidential medical information, and the Fifth Circuit and

other courts have consistently rejected any argument to the contrary.  <u>Carpenter v.</u>

Phillips, 419 F. App'x 658, 659 (7th Cir. 2011); Roberts v. Unitrin Specialty Lines Ins.

Co., 405 F. App'x 874, 882 & n.8 (5th Cir. 2010) (citing Acara v. Banks, 470 F.3d 569,

571 (5th Cir. 2006)); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Wilkerson v.

Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); Brockway v. VA Conn. Healthcare

Sys., No. 3:10-CV-719(CSH), 2012 WL 2154263, at *15 (D. Conn. June 13, 2012);

Cassidy v. Nicolo, No. 03-CV-6603-CJS, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7,

2005).

"Since HIPAA does not create a private right, it cannot be privately enforced

either via § 1983 or through an implied right of action." Adams v. Eureka Fire Prot.

Dist., 352 F. App'x 137, 139 (8th Cir. 2009). Accordingly, Dean fails to state a claim for

which relief could be granted under HIPAA, and this claim must be dismissed.

F.     Plaintiff Fails to State a Claim for Disability Discrimination

Dean cites the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the

Rehabilitation Act, 29 U.S.C. § 701 et seq., as bases for his claims of disability

discrimination. Defendant moves to dismiss plaintiff's disability discrimination claims

on the basis that plaintiff makes only conclusory allegations and fails to allege facts to

demonstrate that he has a disability which limits a major life activity. Broadly construing

plaintiff's complaint to include a claim of disability discrimination against the City of

New Orleans, I find that he fails to state a cognizable claim based on Section 12112(a)

of the Americans with Disabilities Act or Section 794(a) of the Rehabilitation Act because (1) his complaint shows that he was <u>not</u> employed by the Police Department when it released information about him to the SBA and (2) he fails to allege that he was a qualified individual with a disability, as defined by these statutes.

As to discrimination based on disability, the Americans with Disabilities Act and the Rehabilitation Act both

> prohibit <u>employment discrimination</u> against qualified individuals with disabilities, but the statutes govern different entities: the [Americans with Disabilities Act] applies only to public entities, including private <u>employers</u>, 42 U.S.C. § 12131(1), whereas the [Rehabilitation Act] prohibits discrimination in federally-funded programs and activities, 29 U.S.C. § 794(a). The [two statutes] are judged under the same legal standards, and the same remedies are available under both Acts. Likewise, the relevant definition of disability set forth in the [Americans with Disabilities Act] is applicable to claims made under the [Rehabilitation Act].

<u>Kemp v. Holder</u>, 610 F.3d 231, 234-35 (5th Cir. 2010) (citing <u>Delano-Pyle v. Victoria County</u>, 302 F.3d 567, 574 (5th Cir. 2002); <u>Dutcher v. Ingalls Shipbldg.</u>, 53 F.3d 723, 725 n.4 (5th Cir. 1995)) (emphasis added).

The Americans with Disabilities Act provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of <u>employees</u>, employee compensation, job training, and other terms, conditions, and privileges of <u>employment</u>." 42 U.S.C. § 12112(a) (emphasis added). "The statute defines 'covered entity' as an

32

employer, 'employer' as a person engaged in an industry affecting commerce and employing more than fifteen people, and 'employee' as someone employed by an employer.  The definition of a 'qualified individual with a disability' clearly foresees an employment relationship."  Johnson v. City of Saline, 151 F.3d 564, 567-68 (6th Cir. 1998) (quoting 42 U.S.C. § 12111(2), (4)-(5), (8)).  Thus, "it is clear that application of the [Americans with Disabilities Act] requires the existence of an employer-employee relationship."  Janette v. Am. Fid. Grp., Ltd., 298 F. App'x 467, 471 (6th Cir. 2008).

The Americans with Disabilities Act also "defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  Equal Employ't Opportunity Comm'n v. Chevron Phillips Chem. Co., 570 F.3d 606, 613-14 (5th Cir. 2009) (quoting 42 U.S.C. § 12111(8)) (emphasis added).

> To prevail on his [Americans with Disabilities Act] and [Rehabilitation Act] claims, [plaintiff] must establish that (1) he is disabled within the meaning of the [Americans with Disabilities Act], (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him [or took other adverse employment action] because of his disability.

Kemp, 610 F.3d at 235 (citing Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999)) (emphasis added).

"The plaintiff in an employment discrimination case carries the burden of establishing that the defendant was his <u>employer</u>" at the time of the allegedly discriminatory action.  <u>Florez v. Holly Corp.</u>, 154 F. App'x 707, 708 (10th Cir. 2005) (citing <u>Lockard v. Pizza Hut, Inc.</u>, 162 F.3d 1062, 1069 (10th Cir. 1998)) (emphasis added).  A disabled <u>former</u> employee has no standing to sue his former employer for disability discrimination under the Americans with Disabilities Act or the Rehabilitation Act based on actions that occurred after the employment relationship ended.  <u>McKnight v. Gen. Motors Corp.</u>, 550 F.3d 519, 525-27 (6th Cir. 2008) (citing <u>Morgan v. Joint Admin. Bd.</u>, 268 F.3d 456, 457-58 (7th Cir. 2001); <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1110 (9th Cir. 2000); <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1161-62 (10th Cir. 1999); <u>Parker v. Metro. Life Ins. Co.</u>, 99 F.3d 181, 186 (6th Cir. 1996), <u>opinion vacated & decided on other grounds</u>, 121 F.3d 1006 (6th Cir. 1997); <u>Gonzales v. Garner Food Servs., Inc.</u>, 89 F.3d 1523, 1531 (11th Cir. 1996); <u>Beauford v. Father Flanagan's Boys' Home</u>, 831 F.2d 768, 771-72 (8th Cir. 1987)); <u>Youngblood v. Prudential Ins. Co.</u>, 706 F. Supp. 2d 831, 836 (M.D. Tenn. 2010).  Thus, if the City of New Orleans was not plaintiff's <u>employer</u> at the time of the alleged employment action, the City cannot be liable for discrimination under either the Americans with Disabilities Act or the Rehabilitation Act.  <u>Florez</u>, 154 F. App'x at 708; <u>Johnson</u>, 151 F.3d at 568;

Meyer v. Qualex, Inc., 388 F. Supp. 2d 630, 635 (E.D.N.C. 2005); McCarron v. British

Telecom, No. 00-CV-6123, 2002 WL 1832843, at *3 (E.D. Pa. Aug. 7, 2002).

To the extent that Dean alleges in his complaint that the Police Department

committed discriminatory acts between October 1 and November 10, 2007, he was then

employed by the SBA and the Police Department was his former employer.  The City of

New Orleans, as plaintiff's former employer, cannot be held liable for its release of

information to the SBA under Section 12112(a) of the Americans with Disabilities Act

or Section 794(a) the Rehabilitation Act.

In addition, as a threshold requirement for recovery under either statute, Dean

must allege that "'[he] is a qualified individual with a disability, and that the negative

employment action occurred because of the disability.'"  Holtzclaw v. DSC Commc'ns

Corp., 255 F.3d 254, 258 (5th Cir. 2001) (quoting Sherrod v. Am. Airlines, Inc., 132 F.3d

1112, 1119 (5th Cir. 1998)); accord Lanman v. Johnson County, 393 F.3d 1151, 1156

(10th Cir. 2004) (citing 42 U.S.C. § 12112(a); Steele v. Thiokol Corp., 241 F.3d 1248,

1252 (10th Cir. 2001)); McClure v. Gen. Motors Corp., 75 F. App'x. 983, 2003 WL

21766539, at *1 (5th Cir. 2003) (citing Waldrip v. Gen. Elec. Co., 325 F.3d 652, 654 (5th

Cir. 2003); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996)).

The Americans with Disabilities Act

defines a disability as "(A) a physical or mental impairment that
substantially limits one or more major life activities of such individual; (B)

a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A).

Kemp, 610 F.3d at 235.

Dean has not alleged that he was a qualified individual with a disability when the Police Department released information about him to the SBA.  He has not alleged any facts to show that he had a disability as defined by Section 12102(1).  He has only made conclusory allegations that he was disabled.

In the absence of any factual allegations sufficient to raise a right to relief above the speculative level, Dean fails to state a claim for disability discrimination against the City of New Orleans under Section 12112(a) of the Americans with Disabilities Act or Section 794(a) the Rehabilitation Act, and this claim must be dismissed.  Mercer v. Arbor E & T, No. 4:11-cv-3600, 2012 WL 1425133, at *6-8 (S.D. Tex. Apr. 21, 2012); Cetina v. Super Target, No. 3:04-CV-1475-M, 2004 WL 2434416, at *2 (N.D. Tex. Nov. 1, 2004), report & recommendation adopted, 2004 WL 4910145 (N.D. Tex. Dec. 1, 2004).

G.    Plaintiff Fails to State a Claim for Release of Confidential Medical Information Under the Americans with Disabilities Act

To the extent that Dean relies on the Americans with Disabilities Act, his complaint against the City of New Orleans more likely arises under 42 U.S.C. § 12112(d) regarding the release of confidential medical information, rather than under the disability

discrimination sections discussed above.  However, he fails to state a claim for relief under this portion of the statute because his complaint does not allege any facts indicating that the City disclosed to the SBA any protectable medical information that was obtained from Dean pursuant to Section 12112(d).

First, Dean's complaint does not allege any facts indicating that the City disclosed any medical information.  According to the EEOC decision attached to the complaint, the SBA received information that Dean had been terminated from his employment with the Police Department and used that information as a basis not to renew his employment. The EEOC decision does not mention any medical information.  The only mention of medical information in the complaint is Dean's assertion that the SBA knew "of my surgery at the VA hospital and the disability requirements submitted from the VA doctors for future working accommodations.  One of the accommodations was that I be allowed to move around every 20 to 30 minutes, which is why I was allowed to be away from my desk during this time frame for medical reasons."  Record Doc. No. 1 at p. 2.  These allegations indicate that Dean voluntarily provided the SBA with his medical information so he could obtain some accommodations.

Second, Section 12112(d) governs the type of medical examinations and inquiries that an employer can request of job applicants and employees.[3]  This section generally

---

[3]42 U.S.C. § 12112(d) provides in relevant part:
(1) In general[:]  The prohibition against discrimination as referred to in subsection (a)

mandates that the employer keep confidential any medical information received through

such examinations and inquiries.

Section 102(d) [42 U.S.C. § 12112(d)] of the ADA [Americans with Disabilities Act] governs "medical examinations and inquiries." . . . . That section covers medical examinations and inquiries in three distinct instances: (a) preemployment, ADA § 102(d)(2), 42 U.S.C. § 12112(d)(2); (b) post-offer, ADA § 102(d)(3), 42 U.S.C. § 12112(d)(3); and (c) during the employment relationship, ADA § 102(d)(4), 42 U.S.C. § 12112(d)(4). Although ADA § 102(d)(2) <u>prohibits</u> employers from making certain pre-employment inquiries, the provisions of ADA § 102(d)(3) and (4) <u>permit</u> employers to conduct certain medical inquiries and examinations. More specifically, ADA § 102(d)(3) permits an employer to conduct post-offer

---

of this section [42 U.S.C. § 12112(a)] shall include medical examinations and inquiries.
(2) Preemployment
    . . . .
      (B) Acceptable inquiry[:]  A covered entity may make preemployment
      inquiries into the ability of an applicant to perform job-related functions.
(3) Employment entrance examination[:]  A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if–
    . . .
      (B) information obtained regarding the medical condition or history of
      the applicant is collected and maintained on separate forms and in
      separate medical files and is treated as a confidential medical record,
      [with three exceptions not relevant here] . . . ; and
      (C) the results of such examination are used only in accordance with this
      subchapter.
(4) Examination and inquiry
    . . . .
      (B) Acceptable examinations and inquiries[:]  A covered entity may
      conduct voluntary medical examinations, including voluntary medical
      histories, which are part of an employee health program available to
      employees at that work site.  A covered entity may make inquiries into
      the ability of an employee to perform job-related functions.
      (C) Requirement[:]  Information obtained under subparagraph (B)
      regarding the medical condition or history of any employee are subject
      to the requirements of subparagraphs (B) and (C) of paragraph (3).

entrance medical examinations under certain circumstances, see 42 U.S.C. § 12112(d)(3), and ADA § 102(d)(4) permits employers to "conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site," 42 U.S.C. § 12112(d)(4)(B).

Any information obtained through a post-offer entrance medical examination under § 102(d)(3) or a voluntary medical examination or inquiry under § 102(d)(4) must be "treated as a confidential medical record." 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C); . . . . **Disclosure of confidential information obtained through an authorized medical examination or inquiry would constitute a violation of § 102(d) and could give rise to a claim under the ADA**. See 42 U.S.C. § 12112(d)(3)(C) (stating that the results of an examination conducted under the authority of § 102(d)(3) or § 102(d)(4) must be "used only in accordance with this title"); <u>see also</u> <u>McPherson v. O'Reilly Auto., Inc.</u>, 491 F.3d 726, 732 (8th Cir. 2007) ("The ADA prohibits an employer from disclosing confidential medical information about an ex-employee . . . ." (citing <u>Cossette v. Minn. Power & Light</u>, 188 F.3d 964 (8th Cir. 1999))).

<u>Equal Employ't Opportunity Comm'n v. C.R. England, Inc.</u>, 644 F.3d 1028, 1046-47 (10th Cir. 2011) (underlined emphasis in original) (bold emphasis added); <u>accord</u> <u>Equal Emp't Opportunity Comm'n v. Overnite Transp. Co.</u>, No. 7:01CV00076, 2001 WL 1521584, at *2 (W.D. Va. Nov. 30, 2001) (citing 42 U.S.C. § 12112(d)). "Nothing in subsection (d) states that the information can be released as part of a job reference to prospective employers." <u>Heston v. Underwriters Labs., Inc.</u>, 297 F. Supp. 2d 840, 844 (M.D.N.C. 2003).

Unlike a person who brings a claim of disability discrimination under Section 12112(a), a plaintiff who sues under Section 12112(d) complaining of an unauthorized

release of his confidential medical information need <u>not</u> allege that he is a qualified

individual with a disability.

> [N]othing in subsection (d) suggests that its coverage is restricted to
> "qualified individuals."   Subsection (d) does not even use the term
> "qualified individual," but rather speaks in terms of "employees" and "job
> applicants."   Furthermore, the focus of subsection (d) is on protecting
> "information" which makes its purpose slightly different than
> subsection (a) which seeks to protect against discriminatory actions
> affecting qualified individuals.
>    . . . .  All three circuit courts of appeals that have examined the
> question of whether a plaintiff must be a "qualified individual" to sue under
> subsection (d) have answered the question in the negative.
>    [This] reading of the statute is consistent with the obvious overall
> purpose of the subsection, which is to tightly regulate most job related
> health exams.  Put another way, "[i]t makes little sense to require an
> employee to demonstrate that he has a disability to prevent his employer
> from inquiring as to whether or not he has a disability."

<u>Id.</u> (quoting <u>Cossette</u>, 188 F.3d at 969) (citing <u>Fredenburg v. Contra Costa County</u>, 172

F.3d 1176 (9th Cir. 1999); <u>Griffin v. Steeltek, Inc.</u>, 160 F.3d 591 (10th Cir. 1998); <u>Roe</u>

<u>v. Cheyenne Mt. Conference Resort, Inc.</u>, 124 F.3d 1221 (10th Cir. 1997)) (internal

quotation omitted); <u>accord</u> <u>McPherson</u>, 491 F.3d at 732; <u>Montano v. INOVA Health Care</u>

<u>Servs.</u>, No. 1:08cv565, 2008 WL 4905982, at *7 (E.D. Va. Nov. 12, 2008).

The plaintiff also does not have to allege that he is currently employed by the

defendant to state a claim under Section 12112(d), which "prohibits an employer from

disclosing confidential medical information about an ex-employee."  <u>McPherson</u>, 491

F.3d at 732 (citing <u>Cossette</u>, 188 F.3d at 969); <u>see also</u> <u>Heston</u>, 297 F. Supp. 2d at 845

("Even though nothing in subsection (d) explicitly grants coverage to former employees,

nothing in the plain language of subsection (d) indicates that they are not covered.").

Therefore, if medical information is gathered by an employer pursuant to Section

12112(d),

> it must be treated as confidential and used only in accordance with
> subsection (d). . . . <u>When employers gather information under subsection
> (d), this triggers the duty of confidentiality</u> with respect to the person about
> whom the information is gathered, whether disabled or not. . . .
>
> The need to protect this sensitive information does not end upon the
> termination of employment.  To that end, the portions of the statute
> mandating the confidentiality of certain medical information set no time
> limits on the period of confidentiality.  Therefore, the statute is most
> reasonably read to impose a continuing duty of confidentiality, and the
> beneficiary of the duty is the person about whom the information has been
> collected, whatever [his] current relationship with the employer may be.

<u>Id.</u> at 845 (citing 42 U.S.C. §§ 12112(d)(3)(B), 12112(d)(4)(C)) (emphasis added).

Section 12112(d) does <u>not</u> protect all medical information, regardless of how it

was obtained by the employer.

> On its face, [Section § 12112(d)] does not apply to or protect
> information that is <u>voluntarily</u> disclosed by an employee unless it is elicited
> during an authorized employment-related medical examination or
> inquiry. . . .  Indeed, the only mention of the word "voluntary" appears in
> § 102(d)(4)(B), which refers to "voluntary medical examinations, including
> voluntary medical histories, which are <u>part of an employee health program</u>
> available to employees at that work site." 42 U.S.C. § 12112(d)(4)(B)
> (emphasis added).  However, this provision does not expressly include
> voluntarily disclosed medical information offered outside the context of "an
> employee health program." <u>Id.</u>  Because the plain language of the statute
> is silent with regard to such information, it perforce cannot be interpreted
> as extending the protections of § 102(d)'s confidentiality restrictions to

such information.  In sum, if an employer discloses medical information that was voluntarily offered by an employee–**outside of the context of an authorized employment-related medical examination or inquiry–then the employer is not subject to liability** under § 102(d).

C.R. England, Inc., 644 F.3d at 1047 (underlined emphasis in original) (bold emphasis added); accord Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000)).

> Under its plain meaning, section [12112(d)(4)] protects **only that information which an employer acquires through a medical inquiry or a medical examination**.  The statute focuses on the employer's active role in the disclosure and thus does not protect any disclosure of medical information to an employer no matter how it arises; only those disclosures which the employer obtains through a "medical examination" of the employee or an inquiry "as to whether such employee is an individual with a disability or as to the nature or severity of the disability" are protected.

Equal Employ't Opportunity Comm'n v. Thrivent Fin. for Lutherans, 795 F. Supp. 2d 840, 844 (E.D. Wis. June 15, 2011) (quoting 42 U.S.C. § 12112(d)(4)(A)) (underlined emphasis in original) (bold emphasis added); accord Montano, 2008 WL 4905982, at *7 (citing 42 U.S.C.A. § 12112(d)(3)(B); Wiggins v. DaVita Tidewater, LLC, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006)); Pouliot v. Town of Fairfield, 226 F. Supp. 2d 233, 246 (D. Me. 2002).  As a matter of law, plaintiff cannot succeed on a claim under Section § 12112(d) if his medical information was not obtained through an entrance exam or a disability-related inquiry.  C.R. England, Inc., 644 F.3d at 1047; Cash, 231 F.3d at 1307; Montano, 2008 WL 4905982, at *7; Pouliot, 226 F. Supp. 2d at 246; Overnite Transp. Co., 2001 WL 1521584, at *3.

42

Thus, Dean must allege facts to show "that the disclosed information was confidential" as defined by Section § 12112(d) and the cases cited above. McPherson, 491 F.3d at 732 (citing Cossette, 188 F.3d at 970). However, he has not alleged that any medical information that the Police Department may have released to the SBA was obtained through an entrance examination or a disability-related inquiry. In the absence of any such factual allegations, he fails to state a claim upon which relief can be granted under Section § 12112(d).

In addition, Dean must allege "that he suffered some kind of tangible injury as a result of the disclosure" of the confidential medical information. McPherson, 491 F.3d at 732 (citing Cossette, 188 F.3d at 970); accord Giaccio v. City of N.Y., 502 F. Supp. 2d 380, 386 (S.D.N.Y. 2007), aff'd, 308 F. App'x 470 (2d Cir. 2009). "A technical violation of section 12112(d) will not in and of itself give rise to damages liability. In the absence of any damage, [plaintiff's] ADA claim must be dismissed." Id.

Dean's complaint does not allege that he suffered any tangible injury as a result of the Police Department's release, if any, of medical information obtained pursuant to Section 12112(d). Nothing in his complaint asserts that the SBA's termination of his job, or any other tangible injury, was based on the Police Department's release of confidential medical information.

43

Accordingly, Dean fails to state a claim upon which relief can be granted under Section 12112(d) of the Americans with Disabilities Act.

H.     Plaintiff Fails to State a Claim Under 10 U.S.C. § 12304

Dean appears also to allege that he was discriminated against because he was a military veteran.  He cites 10 U.S.C. § 12304 as a legal basis for his claim.  Title 10 U.S.C. § 12301 et seq. authorizes the executive branch of the United States government to call members of the military reserves into active duty.  This statute does not grant any right to bring a civil action against an employer.  Plaintiff cannot state a plausible claim for relief under 10 U.S.C. § 12304.

VI.    PLAINTIFF'S STATE LAW CLAIMS ARE DISMISSED

To the extent that Dean asserts claims for defamation and discrimination under Louisiana law, or any other state law claims, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience,

44

fairness, and comity that the Supreme Court outlined in <u>Carnegie-Mellon University v.</u>

<u>Cohill</u>, 484 U.S. 343, 350-51 (1988), and <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715,

726 (1966)."  <u>Batiste v. Island Records, Inc.</u>, 179 F.3d 217, 227 (5th Cir. 1999); <u>accord</u>

<u>Enochs v. Lampasas County</u>, 641 F.3d 155, 158-59 (5th Cir. 2011); <u>Brookshire Bros.</u>

<u>Holding, Inc. v. Dayco Prods., Inc.</u>, 554 F.3d 595, 602 (5th Cir. 2009).

> The statutory considerations are whether
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); <u>accord</u> <u>Enochs</u>, 641 F.3d at 159.

> Although the Fifth Circuit's
>
> "general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute.  Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

<u>Batiste</u>, 179 F.3d at 227 (quotations and citations omitted); <u>accord</u> <u>Enochs</u>, 641 F.3d at

161; <u>Brookshire Bros.</u>, 554 F.3d at 602.  The district court must make its decision "in

light of the specific circumstances of the case at bar."  <u>Id.</u> (citation omitted).  The Fifth

Circuit's

case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case [during more than 3 years of litigation, the court had decided 41 dispositive motions, 14 <u>Daubert</u> motions and 7 other motions in limine; discovery was closed; and the parties were making final preparations for their fourth trial setting], that court has abused its discretion under 28 U.S.C. § 1367.

<u>Id.</u>

In the instant case, plaintiff's federal claims have been dismissed.  The factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over his state law tort claims.  First, as noted, no federal claims remain in the case.  Second, comity favors dismissing the state law claims and letting the state court handle them (if plaintiff decides to pursue them) because of Louisiana's interest in adjudicating the claims of its citizens brought under its laws.  Third, because the state law claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in favor of maintaining jurisdiction.  Finally, fairness and convenience are equal whether the claim is brought in state or federal court.

"Unadjudicated pendant [sic] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal claims serving as the basis for its jurisdiction and elects not to exercise supplemental

jurisdiction over the state law claims." <u>Brown v. Miss. Valley State Univ.</u>, 311 F.3d 328,

334 n.6 (5th Cir. 2002) (citing <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 246 (5th Cir.

1999)); <u>accord</u> <u>Johnson v. Texas Bd. of Crim. Justice</u>, No. 07-20396, 2008 WL 5069357,

at *2 (5th Cir. Dec. 2, 2008).  Accordingly, Dean's state law claims will be dismissed

without prejudice.

<u>CONCLUSION</u>

For all of the foregoing reasons, defendant's motion to dismiss is GRANTED and

plaintiff's federal claims are DISMISSED WITH PREJUDICE.  His state law claims are

DISMISSED WITHOUT PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this _____2nd_____ day of July, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE